UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DION HENDERSON, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-5626** |
| **MCMORAN OIL, ET AL** | **SECTION I** |

### ORDER AND REASONS

Before the Court is a motion for summary judgment[1] with respect to the issue of loss of consortium filed by defendant, Quality Production Management, LLC ("QPM"). Plaintiffs, Dion Henderson and Denis Henderson, oppose such motion. For the reasons set forth herein, QPM's motion for summary judgment is DENIED.

### *BACKGROUND*

Denis Henderson was injured on February 27, 2009 when a crane allegedly fell on him while he was dismantling it. At the time, Denis Henderson was working as a senior crane mechanic for Seatrax Services, Inc. ("Seatrax") on the West Cameron Block 639 platform ("WC-639 platform").[2] The WC-639 platform is located offshore of Louisiana, beyond the boundary of Louisiana territorial waters on the Outer Continental Shelf.[3] The parties do not appear to dispute that the Outer Continental Shelf Lands Act ("OCSLA") governs this dispute.[4]

---

[1] R. Doc. No. 57.
[2] R. Doc. No. 67-1.
[3] Id.
[4] Regardless of whether the parties disagreed with respect to the applicability of OCSLA, the Court concludes that OCSLA applies to this dispute. Texaco Exploration and Prod., Inc. v. AmClyde Eng'rd Prod. Co., Inc., 448 F.3d 760, 772 (5th Cir. 2006) (OCSLA's "choice of law rules are not subject to exception by the parties' agreement").

1

For purposes of this motion, Dion Henderson, Denis Henderson's wife, asserts a claim under Louisiana law for loss of consortium.[5] QPM argues that Dion Henderson is barred from asserting a claim for loss of consortium because Denis Henderson was injured on the Outer Continental Shelf and general maritime law does not recognize such a claim. In turn, Dion and Denis Henderson argue that OCSLA borrows the law of the adjacent state. Accordingly, they argue that because the law of Louisiana – the adjacent state in this matter – provides a cause of action for loss of consortium, summary judgment should be denied with respect to such issue.

## *LAW AND ANALYSIS*

### I.      Summary Judgment

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must carry this burden as to each essential element on which it

---

[5] R. Doc. No. 67-1.

2

bears the burden of proof.  Schaefer v. Gulf Coast Regional Blood Center, 10 F.3d 327, 330 (5th Cir. 1994).  The showing of a genuine issue of fact is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue.  Id.  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## II.     OCSLA and Loss of Consortium

"OCSLA extends federal law to the Outer Continental Shelf and borrows adjacent state law as a gap-filler."  Texaco Exploration and Prod., Inc. v. AmClyde Eng'rd Prod. Co., Inc., 448 F.3d 760, 772 (5th Cir. 2006) (citing 43 U.S.C. § 1333), amended on rehearing without substantive change by 453 F.3d. 652 (5th Cir. 2006).  OCSLA provides that, "[t]o the extent that they are applicable and not inconsistent with [certain other OCLSA provisions] or with other Federal laws and regulations . . . the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon."  Id. (quoting 43 U.S.C. § 1333(a)(2)(A) (internal quotation marks omitted)).  As plaintiffs correctly observe:

> state law applies as surrogate federal law under OCSLA if the following three conditions are met, "(1) The controversy must arise on a situs covered by OCSLA  (i.e. the subsoil seabed, or artificial

3

> structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law."

Duet v. Falgout Offshore, LLC, Civil Action No. 09-3321, at *2 (E.D. La. May 5, 2010) (Fallon, J.) (quoting Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778, 785 (5th Cir. 2009)).

First, the parties agree that Denis Henderson's injury occurred on an artificial fixed structure attached to the Outer Continental Shelf. Accordingly, this "controversy . . . arises on a situs covered by OCSLA." Id.

Second, the parties have not demonstrated to the Court that federal maritime law applies of its own force. As the Fifth Circuit has held, it is settled that

> a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second a court must determine whether the "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

Strong v. B.P. Exploration & Prod., Inc., 440 F.3d 665, 669 (5th Cir. 2006) (quoting Grubart, 513 U.S. at 534) (internal quotation marks omitted)).

Because plaintiff's injury occurred on an offshore fixed platform, such accident did not occur on navigable waters. Hufnagel v. Omega Serv. Indus., Inc., 182 F.3d 240, 351 (5th Cir. 1999) (citing Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 89 S.Ct. 1835, 1839-40, 23 L.Ed.2d 360 (1969)). Plaintiff's injury "also lacks the required connection to maritime activity"

4

because he was "involved in the repair . . . of a fixed offshore drilling platform, an activity that has been held to bear no significant relationship to any traditional maritime activity." Ausama v. Tetra Applied Tech., LP, Civil Action No. 05-2513, 2006 WL 1968858, at *5 (E.D. La. June 1, 2006) (citing Herb's Welding, Inc. v. Gray, 470 U.S. 414, 425 (1985)). Accordingly, federal maritime law does not apply of its own force.

Third, the Court concludes that Louisiana law is not inconsistent with federal law. Although Louisiana law provides a cause of action for loss of consortium,[6] QPM is correct that general maritime law does not provide a cause of action for loss of consortium. Nichols v. Petroleum Helicopters, Inc., 17 F.3d 119, 123 (5th Cir. 1994).[7] Accordingly, when workers are injured or killed on the Outer Continental Shelf in circumstances in which admiralty law would otherwise apply, their families have no cause of action for loss of consortium. Id.

In Rodrigue v. Aetna Cas. and Sur. Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), a worker was killed in a crane accident while working on a man-made island in non-territorial waters off the coast of Louisiana. The worker's widow and children sued the crane's manufacturer, installer, and servicer under Louisiana tort law, general maritime law, and the Death on the High Seas Act ("DOHSA"). Id. at 353. The district court granted summary judgment in defendant's favor on all claims except those arising under DOHSA. Id. The Fifth Circuit affirmed such ruling. Id.

Reversing the lower courts, the Supreme Court determined that accidents that occur on fixed man-made structures situated on the Outer Continental Shelf are not governed by maritime

---

[6] La. Civ. Code art. 2315 (A) & (B).
[7] See also Nunez v. Forest Oil Corp., Civil Action No. 07-6850 c/w No. 07-7089, 2008 WL 2522121, at *2 (Vance, J.) (E.D. La. June 20, 2008) (general maritime law does not permit spouses of workers injured in non-territorial waters to recover damages for loss of consortium); Sinegal v. Merit Energy Co., Civil Action No. 07-CV-1740, 2010 WL 1335151, *2 (W.D. La. March 29, 2010) ("In the Fifth Circuit, there is a clear pronouncement that general maritime law precludes claims for loss of consortium.").

5

law.  Id. at 359-60.  Indeed, the Supreme Court "held that the sole remedy arose under state law and rejected wholesale the application of admiralty law."  See Texaco Exploration and Prod. Inc., 448 F.3d at 773 (citing Rodrigue, 395 U.S. at 352).  Noting that it had "specifically held that drilling platforms are not within admiralty jurisdiction," the Supreme Court explained that the accidents in question did not implicate maritime law because they "involved no collision with a vessel, and the structures [where such accidents occurred] were not navigational aids.  They were islands, albeit artificial ones, . . . and the accidents had no more connection with the ordinary stuff of admiralty than do accidents on piers."  Rodrigue, 395 U.S. at 359-60.

The Fifth Circuit adheres to Rodrigue's command to apply state tort law to injuries that occur on fixed platforms.  See Texaco Exploration and Prod., Inc., 448 F.3d at 773 ("[I]n [the Fifth Circuit] Rodrigue is not limited to harm occurring on the fixed platform itself.")  Accordingly, because OCSLA adopts the law of the adjacent state to the extent such law does not conflict with federal law, workers injured on fixed man-made structures situated on the Outer Continental Shelf and their families may utilize the state tort law of the adjacent state.

Like the plaintiff in Rodrigue who was killed while working on a man-made island in non-territorial waters offshore from Louisiana when a crane fell on him, Denis Henderson was allegedly injured while working on a fixed platform when a crane fell on him.  Just as the Supreme Court determined that the worker's family in Rodrigue could avail itself of Louisiana's tort law, this Court concludes that Dion and Denis Henderson may avail themselves of the same.  As noted, Louisiana tort law provides a cause of action for loss of consortium.

*CONCLUSION*

Accordingly, QPM's motion for summary judgment with respect to the issue of loss of consortium is DENIED.

New Orleans, Louisiana, October 15th, 2010.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**