UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DION HENDERSON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-5626** |
| **MCMORAN OIL & GAS, LLC, ET AL.** | **SECTION "I"** |

## ORDER AND REASONS

On August 1, 2011, the Court requested that the parties submit briefing with respect to testimony of defendant's expert, Dr. Boudreaux, regarding the Camus Study.[1] Plaintiffs, Denis and Dion Henderson ("plaintiffs"), argue that Dr. Boudreaux should not be able to testify regarding any of his calculations that rely on the Camus Study because the study is not reliable.[2]

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[1] R. Doc. No. 155.
[2] R. Doc. No. 165.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The party offering the expert testimony has the burden to show, by a preponderance of the evidence, that "the expert's findings and conclusions are . . . reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

Plaintiffs cite *Landry v. Apache Corp.*, 2008 WL 10396 (W.D. La. Jan 8, 2008) (Melancon, J.), *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994), and *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186 (5th Cir. 1991) to support their argument that the Camus Study is unreliable.  The Court finds *Bommarito* unhelpful because, in that case, the Fifth Circuit was presented with a record devoid of any information regarding the Camus Study.  *Bommarito*, 929 F.2d at 191.  Consequently, the Fifth Circuit could not determine the propriety of the district court's decision to exclude the study and it declined to do so.  *Id*.

The Western District's decision in *Landry* relies heavily upon the Fifth Circuit's reasoning in *Marcel*.  In *Marcel*, the Fifth Circuit reviewed whether the district court abused its discretion when it excluded Dr. Boudreaux's testimony that was based on the Camus Study.  *Marcel*, 11 F.3d at 567.  The Fifth Circuit observed that:

> In presenting the proposed testimony of Dr. Boudreaux, [defendant] did not tender any evidence comparing the worklife in the oilfield with the national average or with the worklife of any other occupation. [Defendant] attempted to introduce the specific statistics in the Camus study without reference to any other information which would show that Marcel would likely have a shorter worklife and thus should not receive damages based on an average worklife.
>
> Had [Defendant] adequately developed Dr. Boudreaux' discussion of the Camus study in the context of relevant general economic evidence, it might be a closer question whether the district court abused its discretion in excluding his testimony.

*Id.* at 567-68.  The Fifth Circuit did not conclude that, as a result of this lack of comparison between the worklife for offshore oil workers and the national average, the Camus Study was

3

unreliable. Rather, the Fifth Circuit stated that, given the record, it could not "hold that it was an abuse of discretion to exclude the tendered evidence." *Id.* at 568.[3]

The *Landry* Court cites the above-quoted language from *Marcel* and an affidavit from Shirley J. Smith, Ph.D.,[4] as support for its conclusion that Dr. Boudreaux should be excluded from testifying with respect to the Camus Study. *Landry*, 2008 WL 103960, at *1. There is nothing in the opinion indicating that Dr. Smith was cross-examined regarding the contents of her affidavit or that any hearing, whatsoever, was held with respect to the *Daubert* issue. The court did not make any findings with respect to why it found the study to be unreliable. Other than Dr. Smith's affidavit, the court's opinion does not discuss the breadth or paucity of the record before it. Consequently, the Court cannot look to *Landry* as authority for why the Camus Study is unreliable.

The Court notes that Dr. Boudreaux has been permitted to testify in the Eastern District. *See Morgan v. The Offshore Drilling Company*, No. 05-1351, R. Doc. No. 225 (Lemmon, J.) and *Fletcher v. Transocean Offshore USA Inc.*, No. 05-2992, R. Doc. No. 71 (Fallon, J.). Dr. Boudreaux has also provided the Court with a declaration explaining the Camus Study's reliability.[5] This lends weight to the assertion that the Camus Study is reliable and the Court must resolve the issue.

---

[3] In the declaration that he provided to this Court (R. Doc. No. 170-2), Dr. Boudreaux attempted to address the Fifth Circuit's concerns in *Marcel* (11 F.3d at 567-68) by discussing the differences between occupation-specific worklife studies (such as the Camus Study) and occupation-non-specific worklife studies.

[4] The *Landry* Court quoted Smith's affidavit as stating that the Camus Study " 'cannot be used to accurately determine the worklife of offshore oil workers' " because " 'the methodology employed by Mr. Camus has not been tested or subject to peer scientific community. Furthermore, the known or potential rate of error of the technique cannot be established." *Landry*, 2008 WL 103960, at *1.

[5] R. Doc. No. 170-2.

Accordingly, **IT IS ORDERED** that the Court will hold a *Daubert* hearing to determine the reliability of the Camus Study at **7:30 a.m., Monday, August 29, 2011**, at which time defendant's expert, Dr. Boudreaux, as well as any other witnesses the parties intend to present relative to the Camus Study, will testify outside the presence of the jury.

New Orleans, Louisiana, August 17th, 2011.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**