UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DION HENDERSON, ET AL.**                                                **CIVIL ACTION**

**VERSUS**                                                                      **No. 09-5626**

**MCMORAN OIL & GAS, LLC, ET AL.**                                    **SECTION "I"**

## ORDER AND REASONS

On August 1, 2011, the Court requested that the parties submit briefing with respect to plaintiff Denis Henderson's ("Henderson") alleged failure to mitigate his damages due to his religious beliefs.[1] Defendant, Quality Production Management, LLC ("QPM"), seeks to introduce evidence at trial that Henderson refused to undergo a recommended surgical procedure (the "SI joint fusion") because his religious beliefs prohibit him from receiving blood transfusions.[2] QPM argues that, due to this allegedly unreasonable refusal to undergo surgery, Henderson has failed to mitigate his damages.[3] Plaintiffs, Denis and Dion Henderson (together, "plaintiffs"), oppose the introduction of any evidence with respect to Henderson's religious beliefs because such evidence is "highly prejudicial."[4]

"An injured party has a duty to take reasonable steps to mitigate her damages. . . . However, the burden rests on the tortfeasor to show that the injured plaintiff failed to mitigate his damages. The defendant must show (1) that the plaintiff's conduct after the injury was unreasonable and (2) that the unreasonable conduct has the consequence of aggravating the harm." *Britt v. City of Shreveport*, 55 So.3d 76, 81 (La. App. 2 Cir. 2010) (citing *Fletcher v.*

---

[1] R. Doc. No. 155.
[2] R. Doc. No. 166.
[3] R. Doc. No. 166, p. 10.
[4] R. Doc. No. 171, p. 8.

*Simmons*, 859 So.2d 292 (La. App. 2nd Cir. 2003) and *Avisole v. Dean*, 574 So.2d 1248 (La. 1991)). With respect to whether a plaintiff has taken reasonable steps to mitigate his damages, Louisiana courts have held that "[a] plaintiff must minimize his damages by submitting to reasonable corrective surgery necessary to eliminate any permanent disability." *Pisciotta v. Allstate Ins. Co.*, 385 So.2d 1176, 1182 (La. 1979) (citing *Donovan v. New Orleans Ry. & Light Co.*, 132 La. 239, 61 So. 216 (1913); *Reeves v. Louisiana and Arkansas Rwy Co.*, 304 So.2d 370 (La. App. 1st Cir. 1974); *Dohmann v. Richard*, 282 So.2d 789 (La. App. 3d Cir. 1973); *Welch v. Ratts*, 235 So.2d 422 (La. App. 2d Cir. 1970)); *see also Lawrence v. City of Shreveport*, 948 So.2d 1179, 1189 (La. App. 3d Cir. 2007).

QPM relies on the Fifth Circuit's opinion in *Munn v. Algee*, 924 F.2d 568 (5th Cir. 1991), as authority for its argument that it cannot be held liable for "the corresponding increase in the damages sought by Plaintiff that are due to Plaintiff's unreasonable choice to forego surgery."[5] In *Munn*, Elaine Munn ("Munn") was severely injured in a car accident and required surgery. *Id.* at 571. At the hospital, Munn informed her doctors that, because she was a Jehovah's Witness, she would not accept blood transfusions. *Id*. Munn subsequently died during surgery due to significant blood loss. *Id.* At trial, the defendant argued that Munn's refusal to accept blood transfusions was unreasonable and that she should not be held liable for Munn's failure to mitigate her damages. *Id*. at 573-74. In response, Munn's husband raised the issue of Munn's religious beliefs in order to explain her conduct. *Id*. at 575. He also requested that the trial court instruct the jury to consider "what a reasonable Jehovah's Witness would have done in Mrs. Munn's situation." *Id*. at 578. The trial court refused to use a "reasonable Jehovah's Witness" standard and the Fifth Circuit affirmed the trial court. *Id*. Furthermore, the Fifth Circuit

---

[5] R. Doc. No. 166, p. 10.

"urge[d] the district courts to apply the 'objective' approach to religiously motivated refusals to mitigate damages." *Id.* at 575 n.12.[6] The objective approach requires the jury to assess a plaintiff's actions with respect to how a reasonable person in the plaintiff's situation would act. *Id.*

The issue in *Munn* was whether the jury could consider Munn's religious beliefs in order to determine the reasonableness of her decision not to undergo an otherwise reasonable medical procedure. In this case, Henderson is contesting the reasonableness of the recommended SI joint fusion because he has been advised that he should not undergo the surgery. Henderson's religious beliefs are irrelevant with respect to whether QPM's expert medical testimony is correct that the SI joint fusion would improve Henderson's injuries and, consequently, that he should undergo the surgery.[7]

Given the Fifth Circuit's clear instructions in *Munn*, this Court shall apply the objective approach to QPM's argument that Henderson has failed to mitigate his damages by refusing to undergo an SI joint fusion. The jury must resolve whether it is reasonable for Henderson to undergo an SI joint fusion. Expert medical testimony will address whether an SI joint fusion is

---

[6] While the parties in *Munn* maintained on appeal that the ultimate instructions to the jury were "objective," the Fifth Circuit concluded that the trial court's language was not "purely objective." The Fifth Circuit exhorted district courts to use an objective approach because it does not violate the First Amendment's free exercise clause or establishment clause. *Munn*, 924 F.2d at 575 n.12.

[7] QPM argues that certain health care providers have recommended that Henderson receive surgery. (R. Doc. No. 166, pp. 5-6.) If Henderson receives an SI joint fusion, QPM's experts assert, he will no longer need lifelong pain management or attendant treatment to address pain-induced psychological problems. (R. Doc. No. 166, p. 2.) Henderson argues that his treating physician recommended that he not receive surgery. (R. Doc. No. 171, pp. 4-5.) Henderson states that this recommendation is based on the fact that an SI joint fusion would require the installation of the same type of medical hardware – which ultimately had to be removed – that caused him to go into septic shock for eight days. (R. Doc. No. 171, pp. 2-3, 5.) Moreover, he notes that he has already undergone ten surgeries over the past two years to correct his injuries. (R. Doc. No. 171, p. 6.) These competing positions reflect the testimony that should be presented to the jury. Whether Henderson failed to mitigate his damages turns on a battle of the experts and the jury's resolution of the opposing testimony as to whether he should or should not undergo the surgery.

a surgery that a reasonable person with Henderson's injuries should undergo. Consequently, any reference to Henderson's religious beliefs is irrelevant pursuant to Fed. R. Evid. 401.

Finally, regardless of the fact that the objective approach precludes a jury from considering a plaintiff's religious beliefs *vis-à-vis* reasonableness, the Court finds that the probative value of Henderson's religious beliefs is substantially outweighed by the danger of unfair prejudice, a misleading of the jury and confusion of the issues. As such, the Court excludes such evidence pursuant to Fed. R. Evid. 403.

Accordingly, **IT IS ORDERED** that QPM's request to introduce evidence of Henderson's religious beliefs with respect to his refusal to undergo an SI joint fusion is **DENIED**.

New Orleans, Louisiana, August 19th, 2011.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE